```
1                 IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF FLORIDA
2                    FORT LAUDERDALE DIVISION
                  CASE NO. 0:20-mc-60876-RKA
3

4

5

6   In Re:  Novoship (UK) Limited,

7              Plaintiffs,              Friday, October 30, 2020

8        vs.
                                        Telephonic Hearing
9   Harry Sargeant, Jr., et al.,

10             Defendants.              Pages 1 through 38

11

12

13

14               TRANSCRIPT OF DISCOVERY HEARING
              BEFORE THE HONORABLE PATRICK M. HUNT
15                UNITED STATES MAGISTRATE JUDGE

16

17

18  Appearance of Counsel (Telephonic):

19  For the Plaintiffs:        Ana Maria Barton, Esq.
                               Edward Maurice Mullins, Esq.
20                             REED SMITH LLP

21  For the Defendants:        Jeffrey Scott Wertman, Esq.
                               BERGER SINGERMAN
22

23

24  Transcribed By:            Judith M. Wolff
                               Certified Realtime Reporter
25                             crjudywolff@gmail.com
```

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1          (Court was called to order.)

2               THE COURT:  Calling Case No. 20-60876-MC-Hunt, In Re:

3    Novoship (UK) Limited.

4               Counsel, if you could please announce your appearance

5    for the record.

6               MS. BARTON:  This is Ana Barton, on behalf of

7    applicant Novoship (UK) Limited.

8               MR. MULLINS:  Ed Mullins, also on behalf of Novoship.

9    With Reed Smith.

10              MR. WERTMAN:  Jeffrey Wertman, from Berger Singerman,

11   on behalf of the nonparties Harry Sargeant, Jr., Daniel

12   Sargeant, James Sargeant, Sargeant Marine Inc., and Berger

13   Singerman LLP.

14              THE COURT:  All right.  We're here for a hearing on

15   the nonparty's motion for protective order and objections to

16   subpoenas and to modify the subpoenas.

17              I have reviewed the pleadings.  I have also reviewed

18   the slides that were provided this morning, so you don't have

19   to go over everything.

20              But let me hear first from, I guess, the movant,

21   which would be Mr. Wertman.

22              MR. WERTMAN:  Thank you, your Honor.  Good afternoon.

23   And we appreciate --

24              THE COURT:  Good afternoon.

25              MR. WERTMAN:  -- you're accommodating our schedule

1   today.

2           THE COURT:  Okay.

3           MR. WERTMAN:  Our position is set forth in Docket

4   Entry 10, which is our motion, and Docket Entry 13, which is

5   our reply.

6           We've set forth the facts that the original discovery

7   requests in the subpoenas served by the applicant Novoship

8   were staggering in scope and imposed unreasonable demands on

9   the nonparties, which I will refer to as all of my clients

10  collectively.

11          Notwithstanding Novoship did amend the request and

12  purportedly tried to narrow the requests, but those narrowed

13  requests are still vastly overbroad, unduly burdensome and

14  intrusive, demand that the nonparties respond on behalf of

15  other companies, seek documents that aren't probative of

16  claims currently pending or in reasonable contemplation, seek

17  documents which could be more readily accessible from other

18  sources, and run afoul of the proportionality rule in Federal

19  Rule 26, which applies to subpoenas under Rule 45 and in

20  Section 1782 actions.

21          In the opposition that the applicant filed, which is

22  Docket Entry 12, they do not address at all -- unless I missed

23  it -- the proportionality requirement, the balancing that the

24  Court is supposed to go through to balance the interests of

25  the need for the discovery, and the other factors that are

1  Rule 26(b), including the parties' relative access to relevant

2  information, the parties' resources, and whether the burden or

3  expense of a proposed discovery outweighs its likely benefit.

4          THE COURT:  Well, Mr. Wertman, let me interrupt you.

5          I think maybe part of the reason that they didn't

6  respond to specifics in your objections is it looks like all

7  you did is repeat the same five or six kind of boilerplate

8  objections over and over again.

9          You put them all in your motion which, you know, I

10  know your firm has practiced in front of me and other judges

11  in this district, and pretty much all of us have, number one,

12  a page requirement -- which isn't applicable here because I

13  haven't entered my order yet -- but some of us tell you don't

14  just give us objections that repeat the same rote boilerplate

15  objections over and over again, and say with respect to

16  everything it's overly broad, it's burdensome, it's not

17  proportional.

18          How can they respond to that sort of thing when it's

19  just boilerplate?  How can I rule on it?

20          MR. WERTMAN:  Well, respectfully, your Honor, the

21  objections that we asserted we believe should be read in

22  conjunction with the balance and remainder of the motion,

23  which explains the issues that we're talking about, and in the

24  reply.

25          So yes, I understand the rule about boilerplate

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1  objections, and we endeavor to comply with that rule.  But in

2  this situation, I think we've explained the basis for our

3  objections in the narrative portions of the motion which

4  preceded the actual responses to the individual requests.

5          And having said that, your Honor, we would really --

6  our client, our clients are not parties to the issues in

7  London, and the narrowed requests will impose an extraordinary

8  burden on our clients both financially and time-wise.

9          I don't know if your Honor is familiar with the

10 recent Department of Justice ruling that Sargeant Marine Inc.,

11 which is one of my clients who received a subpoena, pled

12 guilty and agreed to pay $16 million in criminal fines that's

13 been widely publicized through an investigation of the U.S.

14 Attorney's Office in the Eastern District of New York.  That

15 was something that happened less than a month ago.

16         So with respect to one of the Rule 26 factors, the

17 burden and expense and the parties' resources, my client has

18 to pay $16 million.

19         We ask that you consider that in connection with just

20 the general burden of e-discovery, which we laid that out in

21 our reply what the sequence of events and methodology for us

22 to have to comply with those requests would be, and we

23 estimated those costs.

24         Our litigation support group at Berger Singerman gave

25 me their best estimates as to what it would cost just to get

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1   Sargeant's server up and running and have an outside vendor

2   host it so we can then go ahead and start doing searches.

3          What really complicates this, your Honor, is that

4   Andrew Preston, who you can -- you will note from our papers,

5   he's a solicitor in London, who represents Latin American

6   Investments Limited, which is really the entity from which

7   they want to get these documents from.

8          Latin -- LAIL, which is Latin American Investments,

9   is an Isle of Man company.  And rather than subpoena LAIL,

10  they subpoenaed Sargeant Marine and other individuals.

11         So we don't think that's proper, but in any event,

12  Mr. Preston is the one who represented LAIL in the London

13  litigation against the Ruperti parties.  And Mr. Preston is

14  the attorney who was intimately involved with the disputes

15  between the various shareholders under the joint ventures that

16  are mentioned in the petition.

17         So in terms of identifying responsive documents, once

18  everything is loaded up, Mr. Preston is going to need to be

19  involved and people from his office are going to need to be

20  involved, as well as our firm.

21         He doesn't understand, you know, U.S. law, Federal

22  Rules of Civil Procedure, so we will have to be involved in

23  terms of identifying confidentiality and privilege, but he's

24  going to need to be involved to really identify what's

25  responsive.

1          If I look at a document that may be identified as

2   potentially responsive, I'm not going to know if it's really

3   responsive or not.  Mr. Preston is going to need to tell me

4   that.

5          So this is a very cumbersome, time consuming and

6   expensive endeavor and we're not parties to this.

7          Now, I did get a chance to look at the PowerPoint

8   that was put together by the applicant's counsel.  I received

9   it around 12:00 this afternoon.  I didn't really get a chance

10  to thoroughly look at it, but it looks like that they need --

11  they claim they need all of this discovery to support two

12  defenses in the foreign proceeding, right?

13          The first defense is discovery related to

14  establishing Dan Sargeant and Daniel Hall knew it was an

15  unauthorized disclosure.  That's also in paragraph 5 of the

16  petition.

17          Those documents, your Honor, are easily accessible.

18  And I have offered to produce those to the Reed Smith law firm

19  to satisfy all of the subpoenas, but they did not agree to

20  that.

21          There is a pending case, your Honor, and it's also

22  listed on their PowerPoint, on the last page.  It's called

23  Daniel Hall, et al., v. Harry Sargeant, III, Southern District

24  of Florida, 2018.  I believe Judge Altman is the judge that

25  presides over that case.

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1            That case, all of my clients, all of the individual

2    Sargeant family members that I represent, that my firm

3    represents, were deposed in that case, including the director

4    of I.T., Daniel Sargeant, Harry Sargeant, Jr. -- who is also

5    known as Senior -- James Sargeant, Annette Perez.  They were

6    all deposed in that case.

7            And attached to their depositions are exhibits which

8    go to the very issue that -- something that Novoship seeks as

9    part of the first affirmative defense on its PowerPoint

10   regarding the alleged unauthorized disclosure.

11           In addition to all of our clients being deposed,

12   Harry Sargeant, III and all of his family members were

13   deposed.

14           Mr. Hawks (phonetic), who is attending this call

15   right now as a guest, represents Harry Sargeant, III and his

16   entity IOTC.

17           So there is voluminous testimony that already exists

18   in the related case in which Daniel Hall and Burford Capital

19   are parties, and Reed Smith should have obtained all of the

20   transcripts of the depositions, all of the exhibits.  And they

21   would have had a much better idea of what they really need in

22   London.

23           We do not have copies of those transcripts, or the

24   exhibits.  We did not order those because we're not a party.

25   But I'm sure if they were subpoenaed by the Reed Smith law

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1    firm, if he subpoenaed Harry Sargeant, III, they would obtain

2    all of that.

3            And all of that is -- those depositions lasted entire

4    days.  They were very lengthy.  And there is a ton of

5    discovery in that case which I don't know if they've obtained

6    already.

7            So --

8            THE COURT:  So you're saying you did not have access

9    to that information, but that Novoship can access that

10   independently?

11           MR. WERTMAN:  Novoship, if they subpoenaed Harry

12   Sargeant, III, who is a party to that case, I presume Harry

13   Sargeant, III would comply and produce copies of all those

14   deposition transcripts of our clients.

15           And I know -- I attended those depositions and

16   defended them, so I know there were specific discussions about

17   the alleged transfer of information, the highly sensitive

18   information that Mr. Hall obtained.

19           So that's really an easy thing for them to do.  I

20   would like to help them, but I don't have those transcripts.

21   I would certainly give them to them if I did.

22           The other defense that they raise which they say all

23   of this discovery goes to is some kind of public interest

24   defense.

25           They say that one of their defenses in the foreign

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1  proceeding is that the disclosure was justified because it

2  uncovered Ruperti's wrongful conduct by pocketing the PDVSA

3  settlement funds.

4          And they say in order to prove that defense, they

5  need to show that Ruperti acted wrongfully towards LAIL and

6  the Sargeant family, and so they seek discovery of the merits

7  of LAIL's allegations against Ruperti, including the joint

8  venture relationship and how the PDVSA settlement was handled,

9  et cetera, et cetera.

10          Now, that case was settled by my client LAIL and it

11  was dismissed.  And what they say in -- I'm trying to shuffle

12  some papers here so I can be responsive -- in the declaration

13  of Steven Kirpatrick (phonetic), which is -- can be found at

14  Docket Entry 1-1, it's an exhibit to Novoship's petition, at

15  paragraph 38, they -- Novoship further explains that second

16  defense and why they need the discovery.

17          And they say, quote, to prevail on that defense,

18  however, it must be proven that Mr. Ruperti and the foreign

19  claimants were in fact liable to LAIL, i.e., that Mr. Ruperti

20  did actually divert monies from LAIL and deceive LAIL as to

21  this fact.

22          And they go on and say the foreign defendants are

23  therefore effectively in the position of having to litigate

24  LAIL's claim in full as part of their own defense.

25          Well, a few responses to that, Judge.  First of all,

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1  Novoship decided, voluntarily, to assert that defense in the

2  foreign proceeding.  So if they didn't have adequate

3  information or basis to assert that defense in London, they

4  should not have asserted that defense.

5          And it seems like what they want to do is get all of

6  the work product information that LAIL based its claims on,

7  which were settled and dismissed, and re-litigate that.  And

8  that's like an extremely sensitive subject.

9          And that again goes back to Mr. Preston.  There is no

10  requirement, we acknowledge, that Novoship should have

11  subpoenaed Mr. Preston before they initiated the 1782 action.

12  However, it goes to the balancing of factors and the burden.

13  Had they done that, Mr. Preston would have followed and

14  complied with London, with English law, and they could have

15  gotten those documents more readily, we believe, from

16  Mr. Preston.

17          And by doing it this way, by subpoenaing the Sargeant

18  family members and Sargeant Marine, which is not even really

19  relevant here, we still have to get Mr. Preston involved.  And

20  again, we're a nonparty.  It's extremely burdensome.

21          And we can go through, I'm happy to go through the

22  individual requests that they asked for, but they are asking

23  for things relating to like all documents regarding the

24  chartering of the vessels.  How does that have anything to do

25  with the issue --

```
 1              THE COURT:  Let me interrupt you before you get too
 2    far into the weeds of individual things which you had an
 3    opportunity to address individually but chose to do so
 4    boilerplate.  Let me talk about a couple of things.
 5              Number one, you brought up a couple of times that
 6    some of the documents seem to be accessible through other
 7    means.  But that's not before me.
 8              Judge Altman authorized this subpoena.  And one of
 9    the -- I know from previous cases that one of the factors that
10    goes into it is whether it's available from other sources, but
11    the fact that it is available from other sources doesn't
12    necessarily mean that a subpoena shouldn't be upheld.
13              But let me ask you specifically about the Sargeant
14    case that you discussed.  If a great majority or at least a
15    large part of what they're asking for is available in
16    deposition form from another case and easily accessible, did
17    you get together with Ms. Barton and Mr. Mullins and say
18    here's where a bunch of it is, this can save everybody some
19    costs, before you filed a motion to -- whatever the motion
20    is -- before you filed this motion?
21              Did you get together with them to limit the scope of
22    what's required from you under the subpoena, and tell them
23    where they could find those things easily?
24              MR. WERTMAN:  We did do that, your Honor.
25    Absolutely.  It was the first conversation that I had where I
```

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1  explained to them this very issue, that there is a voluminous

2  set of documents, exhibits, sworn deposition testimony for

3  days that go to this first defense that they seek discovery

4  on.  But we couldn't help them with that because I'm not a

5  party -- my clients are not parties to that action, so we're

6  not entitled to those subpoenas.  Which are also, by the way,

7  confidential and protective and marked under protective order

8  in that case.

9       If we had those documents, we would have.  We did

10  direct them to seek those documents from Harry Sargeant, III.

11  And I even agreed that if there were documents that our

12  clients produced in that case through subpoenas or otherwise,

13  that we would produce those documents.  But they wouldn't

14  agree that that fully satisfies the subpoenas.

15       So --

16       THE COURT:  Well, the fact that it wouldn't fully

17  satisfy, if it partially satisfied, at least that would

18  greatly reduce your burden.

19       But let me ask for a response from Ms. Barton and

20  Mr. Mullins.  They say that this is overwhelmingly burdensome,

21  that you have easy access to this information from other

22  sources.

23       What's your response to that?

24       MS. BARTON:  Good afternoon, your Honor.  This is Ana

25  Barton.

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1          So, your Honor, just to begin, as your Honor noted,

2    the first time that we received any of the objections from the

3    Berger Singerman group of clients was when they filed their

4    motion for protective order.

5          There was absolutely no conferral as to this specific

6    request.

7          And to kind of walk through the history here a little

8    bit more than what Mr. Wertman provided, our subpoenas were

9    for 75 requests which Judge Altman, in his order, said were

10   not unduly burdensome and he approved them.

11         As part of that first conversation that we had with

12   Mr. Wertman, he raised the fact that there were 75 requests,

13   could we narrow them?  And as part of that conversation, we

14   did narrow them to 16 requests.

15         Now, in that first conversation, Mr. Wertman did

16   describe to us these depositions and some productions in that

17   other case of Daniel Hall vs. Harry Sargeant, III.

18         But here's the problem, your Honor.  First, the

19   discovery there would only be responsive to one of the

20   first -- or the first of the two defenses that are described

21   on our slide, on page 3 of our slides.

22         So from what we understand, the depositions go into

23   the circumstances of the exchange of information.  But that

24   would not shed light on any of the wrongful conduct by Ruperti

25   that led to the need for LAIL and the Sargeant family to sue

1  Ruperti, which is exactly what we need to prove as part of our

2  public policy defense in the underlying action.

3          So even if that were a viable first step, it still

4  wouldn't cover the 16 document requests that are in our

5  subpoena.

6          But more importantly, what was left out is that that

7  offer was made to us contingent on us never asking them for

8  more documents.  And when we supplied the reduced subpoena

9  requests, down to 16, we asked are the documents and the

10  testimony you're referring to going to be responsive to these

11  16 requests?  And we never got a response.

12          The first thing we heard back was when we got this

13  motion for protective order filed.  After we gave them two

14  enlargements of time that we didn't oppose so that they could

15  do the analysis to tell us is the discovery you're referring

16  to going to cover what we're requesting?

17          Your Honor, since we fully briefed this motion, we've

18  also learned -- there is more information I would like to

19  share with you that we recently learned.

20          The fact is that there is a single sever, the

21  Sargeant family sever, if you will, located in Florida, that

22  has all of these documents.

23          It has the LAIL documents.  We've learned that even

24  though LAIL is technically an Isle of Man entity, it's really

25  just a shell corporation that's run by the Sargeant family,

1 and all of the documents are here in Florida.

2          So the fact that Berger Singerman's clients are

3 trying to point us to another, you know, get these documents

4 from another source, as your Honor already noted, under 1782,

5 there is no requirement for us to do that.

6          We absolutely can get these documents directly from

7 these Florida discovery targets.

8          But additionally, they are giving us a run-around.

9 And they're doing the same thing by saying get the documents

10 from Harry Sargeant, III that we already produced.  That's

11 still giving us the run-around.

12          At the end of the day, they are the ones that have

13 control over all of these documents.

14          So another thing that we've done to try to meet them

15 halfway with their blanket assertions that this is unduly

16 burdensome and overbroad which, as your Honor said, they are

17 just boilerplate statements that they are standing by.  We

18 still haven't really heard how they are overbroad and we did

19 reduce the time and the scope of the subpoenas.  And, we have

20 provided them search terms.

21          Running those search terms on that server will reduce

22 the burden here.  I mean, there is no need to have two sets of

23 lawyers review for relevancy -- I mean, sorry, not relevancy,

24 but responsiveness and privilege.  That's not necessary.

25          It's also not necessary for them to host the entire

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1  Sargeant server on a secondary database to then run the

2  searches.

3       We know for a fact, as has just been described by

4  Mr. Wertman, that they have already made productions of some

5  of these documents in other cases.  I have not heard that they

6  had to incur these costs to get that done.

7       So there is -- these are all artificial hurdles and

8  kind of kitchen sink objections that are being thrown our way

9  because they want an all-or-nothing approach here.

10      THE COURT:  Let me ask, who controls the single

11  server that you referenced that has all the documents you're

12  looking for?  You said it's in Florida, but who has it?

13      MS. BARTON:  By understanding is that all of Berger

14  Singerman's clients that he's representing today have access

15  to it.  Everybody, except for Harry Sargeant, III, who

16  originally did have access but then there was a family feud in

17  2012/2013, and his access was cut off.

18      Which is actually another important wrinkle for your

19  Honor, because Harry Sargeant, III only has what has been

20  produced to him in the litigation.  So he's -- that goes back

21  to Berger Singerman's clients giving us the run-around here.

22      They are the ones, collectively, who have access to

23  this server.  It's not just Sargeant Marine Inc.  It's all of

24  the individuals, and there is only a single server.

25      THE COURT:  All right.  So Berger Singerman and

1  several individual nonparties have access to the server.  And

2  everything you're looking for is on that server and you have

3  provided search terms and you have narrowed the subpoenas, is

4  that your request -- is that what you're telling me?

5          MS. BARTON:  Yes, your Honor.

6          THE COURT:  And that instead of working with you,

7  Berger Singerman led you along and then filed this motion?

8          MS. BARTON:  Exactly, your Honor.  And actually, we

9  learned about the single server in Florida recently.  But --

10 your summary is right on point.

11         THE COURT:  And I assume you would disagree with

12 their statement that finding all these things is going to be

13 well into the six figures and that's not reasonable.

14         MS. BARTON:  Yes, your Honor.  In their original

15 motion, they gave -- they just spit out the number $100,000 to

16 produce these documents, with no back-up.

17             In our response, we attacked that.  And in the reply,

18 they gave a breakdown of what these hosting costs on a

19 different sever, review time -- you know, there is no need to

20 expend $20,000 on just doing an initial search term, to run

21 the initial search terms to find out what volume of documents

22 are we even talking about.

23             We've tried to work with them.  We've sent them the

24 search terms before we even filed our opposition.  We said

25 here's search terms, will you withdraw your motion so that we

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1  can work together on this?  And it was rejected.  So here we

2  are.

3          I mean, we've been trying to be reasonable with them.

4  We didn't have to reduce the scope of the subpoena.

5  Judge Altman in his order said that our 75 requests were -- he

6  approved them.

7          He didn't find them unduly burdensome or unreasonable

8  given what we're seeking to -- the purpose of the discovery

9  that we're seeking.

10          THE COURT:  Got it.

11          All right.  Mr. Wertman, they have narrowed their

12  requests significantly, they've given you search terms to find

13  them, it's all in one spot, you have access to this spot and

14  there is no reason to have, for example, multiple lawyers at

15  $750 an hour reviewing everything.

16          I have to tell you pretty much that what they said

17  sounds reasonable.

18          What's your response?

19          MR. WERTMAN:  Judge, we disagree.  First of all,

20  Judge Altman approved the petition on an ex parte basis.

21          Number two, in terms of the meet and confer, that's a

22  fluid situation where we had to go back and forth.  I had to

23  have conference calls with Andrew Preston and our client Dan

24  Sargeant to figure out what exactly are they looking for.

25          There are 16 requests.  They include subparts and

1  they are extremely overbroad.

2           They have not even obtained the documents which they

3  admittedly were told existed in the pending case, the other

4  pending case before Judge Altman.  I did not hear from

5  opposing counsel that Mr. Wertman told us to obtain those

6  documents, and we did.

7           So even as we speak right now, they still haven't

8  even gotten those deposition transcripts or exhibits in the

9  other case, which is quite alarming.

10          THE COURT:  No.  What they said was they offered to

11 do that.  You said that -- they said they would do that, but

12 also that that wouldn't cover everything, and you said that

13 you would not produce anything else.  That that was a

14 condition of getting them onto those documents, that you

15 wouldn't -- they had to agree not to request anything else,

16 which they're not going to do, right?

17          MR. WERTMAN:  That was the proposal we were

18 discussing and they rejected it.  But my point is, Judge, that

19 even now they still haven't even gotten those documents.

20          So do they have a real need to get those documents to

21 support those defenses?  One would think that they would have

22 obtained those other documents which I pointed them to

23 originally.

24          Now --

25          THE COURT:  But again, they are not required to go to

```
1    other places, are they?  They have subpoenaed you --
2         MR. WERTMAN:  They want the documents -- we don't
3    have those documents, Judge.  I don't have the deposition
4    transcripts and exhibits that I identi--
5         THE COURT:  They don't have to go elsewhere.  If
6    you've got the documents and they subpoenaed you and that's
7    been authorized by Judge Altman, it's not an answer from you
8    to say you can go somewhere else, is it?
9         MR. WERTMAN:  It's not an answer, but that's not the
10   documents I'm talking about.
11        The subset of documents I'm specifically talking
12   about are the deposition transcripts that were taken in the
13   other case.  We don't have those.
14        THE COURT:  Okay.  All right.  What about --
15        MR. WERTMAN:  Mr. Preston will absolutely, 100
16   percent, need to be involved in reviewing documents.
17        I wouldn't be able to tell you if I saw a responsive
18   document or I didn't.  Because these are document requests
19   that, on their face, even as amended by Novoship, are facially
20   overbroad.
21        Some of the requests date back to 19 years ago, 2001.
22   Those are document requests Nos. 4.1, 4.2, 4.3, 4.4 and 8.
23        Some of the requests date back over 14 years ago,
24   2004, 2005, and 2006.  Those are document requests Nos. 5, 6
25   and 10.
```

1          And even if they narrowed the temporal scope of those

2    documents, again, I could read a document and come to the

3    conclusion that it's not responsive because I wasn't involved

4    in the transaction, I don't know anything about the

5    transaction; Mr. Preston does.

6          He would need to be involved, having access to a

7    review platform to review the documents and to let us know if

8    they're responsive.

9          After that, we would have the right to put them on a

10   privilege log if there is a valid claim of privilege or

11   confidentiality.  So that's where my firm would need to be

12   involved.

13         Mr. Preston doesn't know U.S. law on privilege.  So

14   both firms would need to be involved.

15         And in order to run the searches, Judge, it's not

16   simply pushing a button and running the searches.  And the

17   searches that they propose were also very overbroad.

18         So we could run the searches and I can tell them how

19   many search results are, but if we're going to actually do

20   this correctly so there is no complaints about it later on and

21   there is no motions for sanctions when they don't get what

22   they say they need, then it has to be done properly with an

23   ESI protocol that's done in every single case.

24         This is no different.  The server would have to be

25   hosted.  Our firm doesn't have the capability of hosting that

1   server because it's 1.2 terabytes.  That's 1,270 gigabytes.

2           And then we would have vendor fees, which we laid out

3   on pages 3 and 4 of our reply, Docket Entry 13.

4           So the initial startup to do this is about $20,000.

5   And that is just to get the server online so searches can be

6   run.

7           And I don't know how they expect us to do a shortcut.

8   This isn't the old days where people have paper files and they

9   could open their desk cabinet and pull out the file on

10  Novoship.  It's quite different.

11          And what's further complicating is is there are

12  multiple companies within the Sargeant server.  So --

13          THE COURT:  You know --

14          MR. WERTMAN:  -- we're trying to work with them,

15  Judge.  We are not abating our discovery obligations.

16          And I'm sorry the Court has that impression.  But it

17  is not what we tried to do.

18          We had to consult with Mr. Preston to gather -- to

19  gain his understanding of these transactions -- which really

20  are not even really relevant for what they are seeking.

21          THE COURT:  Well, look --

22          MR. WERTMAN:  I'm sorry, Judge.  Go ahead.

23          THE COURT:  Yeah.  You basically made an argument

24  that things are much harder today when we have computers and

25  search terms and e-discovery.  My experience is it's exactly

1  the opposite.

2       If they were asking you to have lawyers and

3  paralegals scattered all over the world, running around

4  looking in filing cabinets, finding things and reviewing them

5  and sending all that, it would be overly burdensome.

6       But they say everything is on one server and they are

7  offering you search terms that would identify the documents

8  that are relevant.

9       How is that more difficult, costly and time consuming

10 than the old days when somebody would go open up a filing

11 cabinet?  It's much easier, isn't it?

12      MR. WERTMAN:  We believe it's more costly.  But it's

13 a moot point, your Honor.  Who is going to pay for this?  Like

14 I indicated, my client has to pay a $16 million criminal fine.

15 And this is going to be time consuming and expensive.  And

16 we've offered to lay this out in affidavits and declarations.

17      And it's not simply run a search.  I would tell you,

18 Judge, we have been involved in a lot of document intensive

19 cases and they run into the hundreds of thousands of dollars.

20      We don't think this is going to get to that, but a

21 $100,000 estimate, with multiple lawyers working on this and

22 processing documents and hosting fees, you know, it's going to

23 get close.  And it's not a simple task and it's also going to

24 take time.

25      And we didn't have that understanding fully when we

1  filed our motion, when we were in the meet and confer process.

2        But it is a very, very real cost that our clients,

3  nonparties, are going to have to bear that we think should be

4  considered under Rule 26(b) in terms of proportionality.

5        THE COURT:  Ms. Barton, are you willing to pay

6  reasonable costs, right?

7        MS. BARTON:  Your Honor, reasonable costs.  Now one

8  of our concerns, especially hearing Mr. Wertman today, is that

9  they are creating these artificial expensive hurdles that

10  aren't necessary.

11        So we realize that if there is a reasonable,

12  necessary cost, and something that we discuss in advance, we

13  are not, you know -- and stating on the record and there is

14  case law saying that a nonparty producing documents under a

15  subpoena and then sending a $50,000 bill is unreasonable

16  because you have to discuss these things in advance.

17        But the whole purpose of search terms is let's figure

18  out the volume of hits, of documents that are hit with that,

19  with those search terms, and then let's take it in stages.

20        Let's figure out what's necessary.  We don't know if

21  we're talking about 100 documents or if we're talking a much

22  larger volume.

23        And we've tried to have that conversation through

24  meet and conferrals and, your Honor, with we've been met with

25  no responses.

```
 1          THE COURT:  Well, you're both presumptively
 2   reasonable lawyers from very good firms that have very good
 3   reputations that deal with big issues involving e-discovery
 4   all the time.
 5          It's certainly not sufficient to simply say
 6   e-discovery is too expensive, we can't do it.  Reasonable
 7   lawyers should be able to get together and discuss it.
 8          And if they can convince you that a search that you
 9   want to do or review process is going to be $10 million,
10   you're not going to do it.
11          But if the lawyers can get together and say maybe you
12   don't need two or three levels of review, or whatever it's
13   going to be, so my question to you was are you willing to pay
14   reasonable costs?
15          And I understand your response is yes, but what they
16   are suggesting is not reasonable.  Is that your response?
17          MS. BARTON:  Yes, your Honor.  My response is that
18   there will need to be further conversations on defining the
19   scope of reasonable.  But absolutely we understand that there
20   are costs that are involved that we would be paying.
21          THE COURT:  And are you willing to talk with
22   Mr. Wertman, and once you establish, for example, the universe
23   of documents that exist, maybe you can limit that to what you
24   actually need and come up with first a search, and then a
25   production, that can be done at a reasonable cost.  You're
```

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1  willing to work with Mr. Wertman on that?

2       MS. BARTON:  Yes.  And in fact that's what we

3  proposed to Mr. Wertman before filing our opposition, to try

4  and get us to that stage before having to come before your

5  Honor.

6       THE COURT:  All right.  Mr. Wertman, it seems to me

7  that they are willing to work with you to limit costs and come

8  up with a reasonable production that will not break anyone's

9  bank, but they will pay reasonable costs.

10      Do you have any problem with that?

11      MR. WERTMAN:  No, I don't, your Honor.

12      I think what would be helpful is we can get together

13 next week, our firm has an ESI team, the head of the ESI team

14 is also an attorney.  There are attorneys in my firm that know

15 ESI better than I do, and we may need to get Mr. Preston

16 involved as well, because like I said, if you showed me a

17 document that said, you know, Ruperti on it, I wouldn't know

18 if it was linked to this or not.

19      We're happy to get together with them immediately and

20 figure out how to do this in the most cost effective way.

21      They are entitled to the documents, but it's just

22 going to be, you know, a scope and cost issue, I think, from

23 our perspective.

24      THE COURT:  Which is best handled by lawyers getting

25 together.

 1          And like I said, if you come up with a universe of
 2    documents that is way too big and a lot of it is going to be
 3    unresponsive because the search terms weren't right, then
 4    limit the search terms.
 5          If it's unreasonably costly, understanding that
 6    Novoship is going to pay at least part of the cost, if it's
 7    unreasonably costly, then you are going to have to figure out
 8    another way to do it.
 9          And if there are lots of responsive doubts that exist
10    somewhere else already, in the form of deposition, for
11    example, then maybe it makes sense for them to do it.
12          But you guys need to get together and discuss these
13    factors and talk about reasonable production and reasonable
14    costs for production and work that out.
15          Do you need me to set a deadline for you?
16          MR. WERTMAN:  We're happy to get together with them
17    as early as next week, Judge.  I don't believe you need to set
18    a deadline.
19          Maybe, if you want to, respectfully, your Honor, if
20    you want to set a status conference for sometime in November.
21    Whatever pleases the Court.
22          THE COURT:  I mean, I prefer not to.  If you and,
23    Ms. Barton, do you think we need a deadline?
24          It sounds like you were working together and then the
25    motion got filed.

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1        If I can trust you guys to work together, generally,

2   discovery should be self-regulating.  There shouldn't be a

3   need for me to be involved and there shouldn't be a need for a

4   status.

5        But if you need me to be involved, I will be.

6        Ms. Barton, do you think we need to set either a

7   deadline or a status?

8        MS. BARTON:  Your Honor, I think that we can have

9   that initial conversation early next week and we can come up

10  with a plan.

11       But I was going to ask that to the extent we can't

12  come up with a reasonable plan with, you know, with good faith

13  efforts, that maybe we can bring it back to your Honor's

14  attention, only if necessary.

15       THE COURT:  Yes.

16       MS. BARTON:  For example -- and not to do this on the

17  Court's clock, but I think that there are some, like, you

18  know, this ESI protocol and having a second, you know,

19  Mr. Preston spending time, I think we can work this out

20  offline.

21       But in the event that we need your Honor to make some

22  rulings, I would just say, you know, we will work as best as

23  we can, and only if we need your Honor to weigh in will we

24  request another hearing.

25       THE COURT:  That sounds reasonable to me and that's

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

1   the way I would like to do it.

2          Unless you guys have already decided that you're not

3   going to be able to work together and work this out -- which

4   is what you should be doing -- and you need me to do it for

5   you, then what I would like you to do is deny without

6   prejudice, require you guys to confer, work it out.

7          I am still here if you need to bring it back to me.

8          But I probably will be entering my discovery order in

9   this case so that if it does come back to me, you will have

10  some guidance about, you know, the way you should bring

11  discovery matters to me.

12         So I think I have already made my feelings clear

13  about that in general early on.  But there are a lot of

14  specifics in my order, including page limits.

15         We will get a written order out, but I'm going to

16  deny the motion without prejudice and require you guys to

17  confer and try to establish production at a reasonable cost.

18  And if you need to bring it back to me, you can.

19         At this point I'm not going to set a deadline or a

20  status conference.  If either party thinks one of those is

21  helpful, you can just contact Keith and we'll do that.

22         Okay?

23         MS. BARTON:  Thank you, your Honor.

24         MR. WERTMAN:  Thank you.

25         THE COURT:  All right.

1          Thank you.

2          Court is in recess.

3

4      (Proceedings were adjourned.)

5

6                          *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TELEPHONIC HEARING TRANSCRIBED FROM DIGITALLY-RECORDED AUDIO

```
 1
 2
 3                     TRANSCRIBER'S  CERTIFICATION
 4
 5
 6            I, Judith M. Wolff, a Certified Realtime Reporter,
 7   with offices in Smyrna, Georgia, do hereby certify:
 8            That I transcribed the proceedings digitally-recorded
 9   on October 30, 2020, in the matter of In Re: Novoship (UK)
10   Limited vs. Harry Sargeant, Jr., et al.;
11            That "indiscernible" designations are the result of
12   technological limitations beyond my control;
13            That said audio recording of the proceedings were
14   reduced to typewritten form by me; and that the foregoing
15   transcript is a true and accurate record of the proceedings to
16   the best of my skill and ability.
17
18   Date:  December 13, 2020
19
20            s/ JUDITH M. WOLFF, CERTIFIED REALTIME REPORTER
             Signature of Transcriber
21
22
23
24
25
```

**MR. MULLINS: [1]**   2/8
**MR. WERTMAN: [18]**   2/10 2/22 2/25
3/3 4/20 9/11 12/24 19/19 20/17 21/2
21/9 21/15 23/14 23/22 24/12 27/11
28/16 30/24
**MS. BARTON: [12]**   2/6 13/24 17/13
18/5 18/8 18/14 25/7 26/17 27/2 29/8
29/16 30/23
**THE COURT: [29]**   2/2 2/14 2/24 3/2
4/4 9/8 12/1 13/16 17/10 17/25 18/6
18/11 19/10 20/10 20/25 21/5 21/14
23/13 23/21 23/23 25/5 26/1 26/21
27/6 27/24 28/22 29/15 29/25 30/25

**$**

**$10 [1]**   26/9
**$100,000 [2]**   18/15 24/21
**$16 [3]**   5/12 5/18 24/14
**$20,000 [2]**   18/20 23/4
**$50,000 [1]**   25/15
**$750 [1]**   19/15

**0**

**0:20-mc-60876-RKA [1]**   1/2

**1**

**1,270 [1]**   23/1
**1-1 [1]**   10/14
**1.2 [1]**   23/1
**10 [2]**   3/4 21/25
**100 [2]**   21/15 25/21
**12 [1]**   3/22
**12:00 [1]**   7/9
**13 [3]**   3/4 23/3 32/18
**14 [1]**   21/23
**16 [5]**   14/14 15/4 15/9 15/11 19/25
**1782 [3]**   19/20 11/11 16/4
**19 [1]**   21/21

**2**

**20-60876-MC-Hunt [1]**   2/2
**2001 [1]**   21/21
**2004 [1]**   21/24
**2005 [1]**   21/24
**2006 [1]**   21/24
**2012/2013 [1]**   17/17
**2013 [1]**   17/17
**2018 [1]**   7/24
**2020 [3]**   1/7 32/9 32/18
**26 [4]**   3/19 4/1 5/16 25/4

**3**

**30 [2]**   1/7 32/9
**38 [2]**   1/10 10/15

**4**

**4.1 [1]**   21/22
**4.2 [1]**   21/22
**4.3 [1]**   21/22
**4.4 [1]**   21/22
**45 [1]**   3/19

**7**

**75 [3]**   14/9 14/12 19/5

**A**

**abating [1]**   23/15
**ability [1]**   32/16
**able [3]**   21/17 26/7 30/3
**about [17]**   4/23 4/25 9/16 12/4 12/13
18/9 18/22 21/10 21/12 21/14 22/4
22/20 23/4 25/21 28/13 30/16 30/18
**absolutely [5]**   12/25 14/5 16/6 21/15
26/19
**access [11]**   4/1 9/8 9/9 13/21 17/14
17/16 17/17 17/22 18/1 19/13 22/6
**accessible [4]**   3/17 7/17 12/6 12/16
**accommodating [1]**   2/25
**accurate [1]**   32/15
**acknowledge [1]**   11/10
**acted [1]**   10/5
**action [3]**   11/11 13/5 15/2
**actions [1]**   3/20

**actual [1]**   5/4
**actually [5]**   10/20 17/18 18/8 22/19
26/24
**addition [1]**   8/11
**additionally [1]**   16/8
**address [2]**   3/22 12/3
**adequate [1]**   11/2
**adjourned [1]**   31/4
**admittedly [1]**   20/3
**advance [2]**   25/12 25/16
**affidavits [1]**   24/16
**affirmative [1]**   8/9
**afoul [1]**   3/18
**After [2]**   15/13 22/9
**afternoon [4]**   2/22 2/24 7/9 13/24
**again [6]**   4/8 4/15 11/9 11/20 20/25
22/2
**against [2]**   6/13 10/7
**ago [3]**   5/15 21/21 21/23
**agree [3]**   7/19 13/14 20/15
**agreed [2]**   5/12 13/11
**ahead [2]**   6/2 23/22
**al [3]**   1/9 7/23 32/10
**alarming [1]**   20/9
**all [41]**
**allegations [1]**   10/7
**alleged [2]**   8/10 9/17
**along [1]**   18/7
**already [8]**   8/17 9/6 16/4 16/10 17/4
28/10 30/2 30/12
**also [12]**   2/8 2/17 7/15 7/21 8/4
13/6 15/18 16/25 20/12 22/17 24/23
27/14
**Altman [7]**   7/24 12/8 14/9 19/5 19/20
20/4 21/7
**am [1]**   30/7
**amend [1]**   3/11
**amended [1]**   21/19
**American [2]**   6/5 6/8
**Ana [3]**   1/19 2/6 13/24
**analysis [1]**   15/15
**Andrew [2]**   6/4 19/23
**Annette [1]**   8/5
**announce [1]**   2/4
**another [7]**   12/16 16/3 16/4 16/14
17/18 28/8 29/24
**answer [2]**   21/7 21/9
**any [4]**   6/11 14/2 14/24 27/10
**anyone's [1]**   27/8
**anything [4]**   11/24 20/13 20/15 22/4
**appearance [2]**   1/18 2/4
**applicable [1]**   4/12
**applicant [3]**   2/7 3/7 3/21
**applicant's [1]**   7/8
**applies [1]**   3/19
**appreciate [1]**   2/23
**approach [1]**   17/9
**approved [3]**   14/10 19/6 19/20
**are [63]**
**aren't [2]**   3/15 25/10
**argument [1]**   23/23
**around [5]**   7/9 16/8 16/11 17/21 24/3
**artificial [2]**   17/7 25/9
**ask [5]**   5/19 12/13 13/19 17/10 29/11
**asked [2]**   11/22 15/9
**asking [4]**   11/22 12/15 15/7 24/2
**assert [2]**   11/1 11/3
**asserted [2]**   4/21 11/4
**assertions [1]**   16/15
**assume [1]**   18/11
**attached [1]**   8/7
**attacked [1]**   18/17
**attended [1]**   9/15
**attending [1]**   8/14
**attention [1]**   29/14
**attorney [2]**   6/14 27/14
**Attorney's [1]**   5/14
**attorneys [1]**   27/14
**audio [1]**   32/13
**authorized [2]**   12/8 21/7
**available [3]**   12/10 12/11 12/15

**B**

**back [11]**   11/9 15/12 17/20 18/16
19/22 21/21 21/23 29/13 30/7 30/9
30/18

**back-up [1]**   18/16
**balance [2]**   3/24 4/22
**balancing [2]**   3/23 11/12
**bank [1]**   27/9
**Barton [8]**   1/19 2/6 12/17 13/19
13/25 25/5 28/23 29/6
**based [1]**   11/6
**basically [1]**   23/23
**basis [3]**   5/2 11/3 19/20
**be [47]**
**bear [1]**   25/3
**because [12]**   4/12 8/24 10/1 13/4
17/9 17/19 21/18 22/3 23/1 25/16
27/16 28/3
**been [7]**   5/13 17/3 17/19 19/3 21/7
24/18 25/24
**before [11]**   1/14 11/11 12/1 12/7
12/19 12/20 18/24 20/4 27/3 27/4
27/4
**begin [1]**   14/1
**behalf [4]**   2/6 2/8 2/11 3/14
**being [2]**   8/11 17/8
**believe [5]**   4/21 7/24 11/15 24/12
28/17
**benefit [1]**   4/3
**BERGER [10]**   1/21 2/10 2/12 5/24 14/3
16/2 17/13 17/21 17/25 18/7
**best [4]**   5/25 27/24 29/22 32/16
**better [2]**   8/21 27/15
**between [1]**   6/15
**beyond [1]**   32/12
**big [2]**   26/3 28/2
**bill [1]**   25/15
**bit [1]**   14/8
**blanket [1]**   16/15
**boilerplate [6]**   4/7 4/14 4/19 4/25
12/4 16/17
**both [3]**   5/8 22/14 26/1
**break [1]**   27/8
**breakdown [1]**   18/18
**briefed [1]**   15/17
**bring [4]**   29/13 30/7 30/10 30/18
**broad [1]**   4/16
**brought [1]**   12/5
**bunch [1]**   12/18
**burden [7]**   4/2 5/8 5/17 5/20 11/12
13/18 16/22
**burdensome [8]**   3/13 4/16 11/20 13/20
14/10 16/16 19/7 24/5
**Burford [1]**   8/18
**button [1]**   22/16

**C**

**cabinet [2]**   23/9 24/11
**cabinets [1]**   24/4
**call [1]**   8/14
**called [2]**   2/1 7/22
**Calling [1]**   2/2
**calls [1]**   19/23
**can [27]**   4/18 4/19 6/2 6/4 9/9 10/12
10/13 11/21 12/18 16/6 19/1 21/8
22/18 23/5 26/8 26/11 26/23 26/25
27/12 29/1 29/8 29/9 29/13 29/19
29/23 30/18 30/21
**can't [2]**   26/6 29/11
**capability [1]**   22/25
**Capital [1]**   8/18
**case [23]**   1/2 2/2 7/21 7/25 8/1 8/3
8/6 8/18 9/5 9/12 10/10 12/14 12/16
13/8 13/12 14/17 20/3 20/4 20/9
21/13 22/23 25/14 30/9
**cases [3]**   12/9 17/5 24/19
**certainly [2]**   9/21 26/7
**CERTIFICATION [1]**   32/3
**Certified [3]**   1/24 32/6 32/20
**certify [1]**   32/7
**cetera [2]**   10/9 10/9
**chance [2]**   7/7 7/9
**chartering [1]**   11/24
**chose [1]**   12/3
**circumstances [1]**   14/23
**Civil [1]**   6/22
**claim [3]**   7/11 10/24 22/10
**claimants [1]**   10/19
**claims [2]**   3/16 11/6
**clear [1]**   30/12

**C**

client [5]   5/6 5/17 10/10 19/23 24/14
clients [14]   3/9 5/6 5/8 5/11 8/1 8/11 9/14 13/5 13/12 14/3 16/2 17/14 17/21 25/2
clock [1]   29/17
close [1]   24/23
collectively [2]   3/10 17/22
come [8]   22/2 26/24 27/4 27/7 28/1 29/9 29/12 30/9
companies [2]   3/15 23/12
company [1]   6/9
complaints [1]   22/20
complicates [1]   6/3
complicating [1]   23/11
complied [1]   11/14
comply [3]   5/1 5/22 9/13
computers [1]   23/24
concerns [1]   25/8
conclusion [1]   22/3
condition [1]   20/14
conduct [2]   10/2 14/24
confer [4]   19/21 25/1 30/6 30/17
conference [3]   19/23 28/20 30/20
conferral [1]   14/5
conferrals [1]   25/24
confidential [1]   13/7
confidentiality [2]   6/23 22/11
conjunction [1]   4/22
connection [1]   5/19
consider [1]   5/19
considered [1]   25/4
consult [1]   23/18
consuming [3]   7/5 24/9 24/15
contact [1]   30/21
contemplation [1]   3/16
contingent [1]   15/7
control [2]   16/13 32/12
controls [1]   17/10
conversation [6]   12/25 14/11 14/13 14/15 25/23 29/9
conversations [1]   26/18
convince [1]   26/8
copies [2]   8/23 9/13
corporation [1]   15/25
correctly [1]   22/20
cost [8]   5/25 25/2 25/12 26/25 27/20 27/22 28/6 30/17
costly [4]   24/9 24/12 28/5 28/7
costs [11]   5/23 12/19 17/6 18/18 25/6 25/7 26/14 26/20 27/7 27/9 28/14
could [9]   2/4 3/17 11/14 12/23 14/13 15/14 22/2 22/18 23/9
couldn't [1]   13/4
counsel [4]   1/18 2/4 7/8 20/5
couple [2]   12/4 12/5
COURT [6]   1/1 2/1 3/24 23/16 28/21 31/2
Court's [1]   29/17
cover [3]   15/4 15/16 20/12
creating [1]   25/9
criminal [2]   5/12 24/14
crjudywolff [1]   1/25
cumbersome [1]   7/5
currently [1]   3/16
cut [1]   17/17

**D**

Dan [2]   7/14 19/23
Daniel [6]   2/11 7/14 7/23 8/4 8/18 14/17
database [1]   17/1
date [3]   21/21 21/23 32/18
day [1]   16/12
days [4]   9/4 13/3 23/8 24/10
deadline [5]   28/15 28/18 28/23 29/7 30/19
deal [1]   26/3
deceive [1]   10/20
December [1]   32/18
decided [2]   11/1 30/2
declaration [1]   10/12
declarations [1]   24/16
defendants [3]   1/10 1/21 10/22

defended [1]   9/16
defense [13]   7/13 8/9 9/22 9/24 10/4 10/16 10/17 10/24 11/1 11/3 11/4 13/3 15/2
defenses [4]   7/12 15/24 20/20 20/21
defining [1]   26/18
demand [1]   3/14
demands [1]   3/8
deny [2]   30/5 30/16
Department [1]   5/10
deposed [4]   8/3 8/6 8/11 8/13
deposition [7]   9/14 12/16 13/2 20/8 21/3 21/12 28/10
depositions [6]   8/7 8/20 9/3 9/15 14/16 14/22
describe [1]   14/16
described [2]   14/20 17/3
designations [1]   32/11
desk [1]   23/9
did [18]   3/11 4/7 7/7 7/19 8/24 9/8 9/21 10/20 12/16 12/21 12/24 13/9 14/14 14/15 16/18 17/16 20/4 20/6 21/18 24/25
different [3]   18/19 22/24 23/10
difficult [1]   24/9
digitally [1]   32/8
digitally-recorded [1]   32/8
direct [1]   13/10
directly [1]   16/6
director [1]   8/3
disagree [2]   18/11 19/19
disclosure [3]   7/15 8/10 10/1
discovery [23]   1/13 3/6 3/25 4/3 5/20 7/11 7/13 9/5 9/23 10/6 10/16 13/3 14/19 15/15 16/7 19/8 23/15 23/25 26/3 26/6 29/2 30/8 30/11
discuss [4]   25/12 25/16 26/7 28/12
discussed [1]   12/14
discussing [1]   20/18
discussions [1]   9/16
dismissed [2]   10/11 11/7
disputes [1]   6/14
district [5]   1/1 1/1 4/11 5/14 7/23
divert [1]   10/20
DIVISION [1]   1/2
do [34]
Docket [5]   3/3 3/4 3/22 10/14 23/3
document [9]   7/1 15/4 21/18 21/18 21/22 21/24 22/2 24/18 27/17
documents [48]
does [3]   11/24 22/5 30/9
doesn't [4]   6/21 12/11 22/13 22/25
doing [5]   6/2 11/17 16/9 18/20 30/3
dollars [1]   24/19
don't [18]   2/18 4/13 5/9 6/11 9/5 9/20 21/2 21/3 21/5 21/13 22/4 22/21 23/7 24/20 25/20 26/12 27/11 28/17
done [6]   11/13 16/14 17/6 22/22 22/23 26/25
doubts [1]   28/9
down [1]   15/9

**E**

e-discovery [4]   5/20 23/25 26/3 26/6
early [3]   28/17 29/9 30/13
easier [1]   24/11
easily [3]   7/17 12/16 12/23
Eastern [1]   5/14
easy [2]   9/19 13/21
Ed [1]   2/8
Edward [1]   1/19
effective [1]   27/20
effectively [1]   10/23
efforts [1]   29/13
either [2]   29/6 30/20
else [14]   20/13 20/15 21/8 28/10
elsewhere [1]   21/5
end [1]   16/12
endeavor [2]   5/1 7/6
English [1]   11/14
enlargements [1]   15/14
entered [1]   4/13
entering [1]   30/8
entire [2]   9/3 16/25
entitled [2]   13/6 27/21

entity [3]   6/6 8/16 15/24
Entry [5]   3/4 3/4 3/22 10/14 23/3
ESI [5]   22/23 27/13 27/13 27/15 29/18
especially [1]   25/8
Esq [3]   1/19 1/19 1/21
establish [2]   26/22 30/17
establishing [1]   7/14
estimate [1]   24/21
estimated [1]   5/23
estimates [1]   5/25
et [5]   1/9 7/23 10/9 10/9 32/10
et al [1]   7/23
et cetera [2]   10/9 10/9
even [14]   11/18 13/11 15/3 15/23 18/22 18/24 20/2 20/7 20/8 20/19 20/19 21/19 22/1 23/20
event [2]   6/11 29/21
events [1]   5/21
every [1]   22/23
everybody [2]   12/18 17/15
everything [7]   2/19 4/16 6/18 18/2 19/15 20/12 24/6
ex [1]   19/20
exactly [4]   15/1 18/8 19/24 23/25
example [4]   19/14 26/22 28/11 29/16
except [1]   17/15
exchange [1]   14/13
exhibit [1]   10/14
exhibits [6]   8/7 8/20 8/24 13/2 20/8 21/4
exist [2]   26/23 28/9
existed [1]   20/3
exists [1]   8/17
expect [1]   23/7
expend [1]   18/20
expense [2]   4/3 5/17
expensive [4]   7/6 24/15 25/9 26/6
experience [1]   23/25
explained [2]   5/2 13/1
explains [2]   4/23 10/15
extent [1]   29/11
extraordinary [1]   5/7
extremely [3]   11/8 11/20 20/1

**F**

face [1]   21/19
facially [1]   21/19
fact [9]   10/19 10/21 12/11 13/16 14/12 15/20 16/2 17/3 27/2
factors [5]   3/25 5/16 11/12 12/9 28/13
facts [1]   3/6
faith [1]   29/12
familiar [1]   5/9
family [8]   8/2 8/12 10/6 11/18 14/25 15/21 15/25 17/16
far [1]   12/2
Federal [2]   3/18 6/21
feelings [1]   30/12
fees [2]   23/2 24/22
feud [1]   17/16
few [1]   10/25
figure [5]   19/24 25/17 25/20 27/20 28/7
figures [1]   18/13
file [1]   23/9
filed [9]   3/21 12/19 12/20 14/3 15/13 18/7 18/24 25/1 28/25
files [1]   23/8
filing [3]   24/4 24/10 27/3
financially [1]   5/8
find [4]   12/23 18/21 19/7 19/12
finding [2]   18/12 24/4
fine [1]   24/14
fines [1]   5/12
firm [9]   4/10 6/20 7/18 8/2 9/1 22/11 22/25 27/13 27/14
firms [2]   22/14 26/2
first [16]   2/20 7/13 8/9 10/25 12/25 13/3 14/2 14/11 14/15 14/18 14/20 14/20 14/25 15/12 19/19 26/24
five [1]   4/7
FLORIDA [9]   1/1 7/24 15/21 16/1 16/7 17/12 18/9
fluid [1]   19/22

**F**

followed [1]   11/13
foregoing [1]   32/14
foreign [5]   7/12 9/25 10/18 10/22 11/2
form [3]   12/16 28/10 32/14
FORT [1]   1/2
forth [3]   3/3 3/6 19/22
found [1]   10/13
Friday [1]   1/7
front [1]   4/10
full [1]   10/24
fully [4]   13/14 13/16 15/17 24/25
funds [1]   10/3
further [2]   10/15 23/11 26/18

**G**

gain [1]   23/19
gather [1]   23/18
gave [4]   5/24 15/13 18/15 18/18
general [2]   5/20 30/13
generally [1]   29/1
Georgia [1]   32/7
get [27]   5/25 6/7 7/7 7/9 11/5 11/19 12/1 12/17 12/21 16/3 16/6 16/9 17/6 20/20 22/21 23/5 24/20 24/23 26/7 26/11 27/4 27/12 27/15 27/19 28/12 28/16 30/15
getting [2]   20/14 27/24
gigabytes [1]   23/1
give [2]   4/14 9/21
given [2]   19/8 19/12
giving [3]   16/8 16/11 17/21
gmail.com [1]   1/25
go [15]   2/19 3/24 6/2 8/8 10/22 11/21 11/21 13/3 14/22 19/22 20/25 21/5 21/8 23/22 24/10
goes [5]   9/23 11/9 11/12 12/10 17/20
going [26]   6/18 6/19 6/24 7/2 7/3 15/10 15/16 18/12 20/16 22/19 24/13 24/15 24/20 24/22 24/23 25/3 26/9 26/10 26/13 27/22 28/2 28/6 28/7 29/11 30/3 30/15 30/19
good [6]   2/22 2/24 13/24 26/2 26/2 29/12
got [5]   15/11 15/12 19/10 21/6 28/25
gotten [3]   11/15 20/8 20/19
great [1]   12/14
greatly [1]   13/18
group [2]   5/24 14/3
guess [1]   2/20
guest [1]   8/15
guidance [1]   30/10
guilty [1]   5/12
guys [5]   28/12 29/1 30/2 30/6 30/16

**H**

had [11]   8/21 11/13 12/2 12/25 13/9 14/11 17/6 19/22 19/22 20/15 23/18
halfway [1]   16/15
Hall [5]   7/14 7/23 8/18 9/18 14/17
handled [2]   10/8 27/24
happened [1]   5/15
happy [3]   11/21 27/19 28/16
harder [1]   23/24
Harry [15]   1/9 2/11 7/23 8/4 8/12 8/15 9/1 9/11 9/12 13/10 14/7 16/10 17/15 17/19 32/10
has [13]   4/10 5/17 15/22 15/23 17/3 17/11 17/12 17/19 17/19 22/22 23/16 24/14 27/13
have [66]
haven't [4]   4/13 16/18 20/7 20/19
having [5]   5/5 10/23 22/6 27/4 29/18
Hawks [1]   8/14
he [7]   6/21 9/1 14/10 14/12 19/5 19/7 22/6
he's [4]   6/5 6/23 17/14 17/20
head [1]   27/13
hear [2]   2/20 20/4
heard [3]   15/12 16/18 17/5
hearing [5]   1/8 1/13 2/14 25/8 29/24
help [2]   9/20 13/4
helpful [2]   27/12 30/21
here [11]   2/14 4/12 10/12 11/19 16/7 16/21 17/9 17/21 19/1 30/7

**here's** [3]   12/18 14/18 18/25
hereby [1]   32/7
highly [1]   9/17
him [1]   17/20
his [7]   6/19 8/12 8/15 14/9 17/17 19/5 23/19
history [1]   14/7
hit [1]   25/18
hits [1]   25/18
Honor [30]   2/22 4/20 5/5 5/9 6/3 7/17 7/21 12/24 13/24 14/1 14/1 14/18 15/17 16/4 16/14 16/16 17/19 18/5 18/8 18/14 24/13 25/7 25/24 26/17 27/5 27/21 28/19 29/8 29/21 29/23 30/23
Honor's [1]   29/13
HONORABLE [1]   1/14
host [2]   6/2 16/25
hosted [1]   22/25
hosting [3]   18/18 22/25 24/22
hour [1]   19/15
how [9]   4/18 4/19 10/8 11/24 16/18 22/18 23/7 24/9 27/20
however [2]   10/18 11/12
hundreds [1]   24/19
HUNT [2]   1/14 2/2
hurdles [2]   17/7 25/9

**I**

I'm [11]   7/2 8/25 10/11 11/21 13/4 21/10 21/11 23/16 23/22 30/15 30/19
i.e [1]   10/19
I.T [1]   8/4
idea [1]   8/21
identi [1]   21/4
identified [1]   7/1
identify [2]   6/24 24/7
identifying [2]   6/17 6/23
III [11]   7/23 8/12 8/15 9/1 9/12 9/13 13/10 14/17 16/10 17/15 17/19
immediately [1]   27/19
important [1]   17/18
importantly [1]   15/6
impose [1]   5/7
imposed [1]   3/8
impression [1]   23/16
Inc [3]   2/12 5/10 17/23
include [1]   19/25
including [4]   4/1 8/3 10/7 30/14
incur [1]   17/6
independently [1]   9/10
indicated [1]   24/14
indiscernible [1]   32/11
individual [5]   5/4 8/1 11/22 12/2 18/1
individually [1]   12/3
individuals [2]   6/10 17/24
information [9]   4/2 9/9 9/17 9/18 11/3 11/6 13/21 14/23 15/18
initial [4]   18/20 18/21 23/4 29/9
initiated [1]   11/11
instead [1]   18/6
intensive [1]   24/18
interest [1]   9/23
interests [1]   3/24
interrupt [2]   4/4 12/1
intimately [1]   6/14
intrusive [1]   30/14
investigation [1]   5/13
Investments [2]   6/6 6/8
involved [16]   6/4 6/19 6/20 6/22 6/24 11/19 21/16 22/3 22/6 22/22 22/14 24/18 26/20 27/16 29/3 29/5
involving [1]   26/3
IOTC [1]   8/16
is [105]
Isle [2]   6/9 15/24
isn't [3]   4/12 23/8 24/11
issue [1]   8/8 11/25 13/1 27/22
issues [1]   4/23 5/6 26/3
it [54]
it's [35]
its [3]   4/3 8/9 11/6

**J**

James [2]   2/12 8/5

**Jeffrey** [2]   1/21 2/10
joint [2]   6/15 10/7
Jr [4]   1/9 2/11 8/4 32/10
judge [18]   1/17 7/24 7/24 10/25 12/8 14/9 19/5 19/19 19/20 20/4 20/18 21/3 21/7 22/15 23/15 23/22 24/18 28/17
Judge Altman [6]   7/24 12/8 14/9 19/5 19/20 21/7
judges [1]   4/10
Judith [3]   1/24 32/6 32/20
just [15]   4/14 4/19 5/19 5/25 14/1 15/17 16/17 17/3 17/23 18/15 18/20 23/5 27/21 29/22 30/21
Justice [1]   5/10
justified [1]   10/1

**K**

Keith [1]   30/21
kind [4]   4/7 9/23 14/7 17/8
Kirpatrick [1]   10/13
kitchen [1]   17/8
knew [1]   7/14
know [29]   4/9 4/10 5/9 6/21 7/2 9/5 9/15 9/16 12/9 16/3 17/3 18/19 22/4 22/7 22/13 23/7 23/13 24/22 25/13 25/20 27/14 27/17 27/17 27/22 29/12 29/18 29/19 29/22 30/10
known [2]   8/5

**L**

laid [2]   5/20 23/2
LAIL [12]   6/8 6/9 6/12 10/5 10/10 10/19 10/20 10/20 11/6 14/25 15/23 15/24
LAIL's [2]   10/7 10/24
large [1]   12/15
larger [1]   25/22
last [1]   7/22
lasted [1]   9/3
later [1]   22/20
Latin [3]   6/5 6/8 6/8
LAUDERDALE [1]   1/2
law [6]   6/21 7/18 8/25 11/14 22/13 25/14
lawyers [8]   16/23 19/14 24/2 24/21 26/2 26/7 26/11 27/24
lay [1]   24/16
learned [4]   15/18 15/19 15/23 18/9
least [3]   12/14 13/17 28/6
led [2]   14/25 18/7
left [1]   15/6
lengthy [1]   9/4
less [1]   5/15
let [8]   2/20 4/4 12/1 12/4 12/13 13/19 17/10 22/7
let's [3]   25/17 25/19 25/20
levels [1]   26/12
liable [1]   10/19
light [1]   14/24
like [14]   4/6 7/10 9/20 11/5 11/8 11/23 15/18 24/13 27/16 28/1 28/24 29/17 30/1 30/5
likely [1]   4/3
limit [4]   12/21 26/23 27/7 28/4
limitations [1]   32/12
Limited [5]   1/6 2/2 7/7 6/6 32/10
limits [1]   30/14
linked [1]   27/18
listed [1]   7/22
litigate [2]   10/23 11/7
litigation [3]   5/24 6/13 17/20
little [1]   14/7
LLP [2]   1/20 2/13
loaded [1]   6/18
located [1]   15/21
log [1]   22/10
London [6]   5/7 6/5 6/12 8/22 11/3 11/14
look [4]   7/1 7/7 7/10 23/21
looking [4]   17/12 18/2 19/24 24/4
looks [2]   4/6 7/10
lot [3]   24/18 28/2 30/13
lots [1]   28/9

**M**

MAGISTRATE [1]  1/14
majority [1]  12/14
make [1]  29/21
makes [1]  28/11
Man [2]  6/9 15/24
many [1]  22/19
Maria [1]  1/19
Marine [5]  2/12 5/10 6/10 11/18 17/23
Marine Inc [1]  2/12
marked [1]  13/7
matter [1]  32/9
matters [1]  30/11
Maurice [1]  1/19
may [2]  7/1 27/15
maybe [6]  4/5 26/11 26/23 28/11 28/19 29/13
mc [2]  1/2 2/2
me [24]  2/20 4/4 4/10 5/25 7/3 12/1 12/4 12/7 12/13 13/19 17/10 18/4 27/6 27/16 28/15 29/3 29/5 29/25 30/4 30/7 30/9 30/11 30/18 32/14
mean [5]  12/12 16/22 16/23 19/3 28/22
means [1]  12/7
meet [4]  16/14 19/21 25/1 25/24
members [3]  8/2 8/12 11/18
mentioned [1]  6/16
merits [1]  10/6
met [1]  25/24
methodology [1]  5/21
million [4]  5/12 5/18 24/14 26/9
missed [1]  3/22
modify [2]  2/16
monies [1]  10/20
month [1]  5/15
moot [1]  24/13
more [8]  3/17 11/15 14/8 15/6 15/8 15/18 24/9 24/12
morning [1]  2/18
most [1]  27/20
motion [17]  2/15 3/4 4/9 4/22 5/3 12/19 12/19 12/20 14/4 15/13 15/17 18/7 18/15 18/25 25/1 28/25 30/16
motions [1]  22/21
movant [1]  2/20
Mr. [34]
Mr. Hall [1]  9/18
Mr. Hawks [1]  8/14
Mr. Mullins [2]  12/17 13/20
Mr. Preston [15]  6/12 6/13 6/18 7/3 11/9 11/11 11/13 11/16 11/19 21/15 22/5 22/13 23/18 27/15 29/19
Mr. Ruperti [2]  10/18 10/19
Mr. Wertman [13]  2/21 4/4 14/8 14/12 14/15 17/4 19/11 20/5 25/8 26/22 27/1 27/3 27/6
Ms. [5]  12/17 13/19 25/5 28/23 29/6
Ms. Barton [5]  12/17 13/19 25/5 28/23 29/6
much [6]  4/11 8/21 19/16 23/24 24/11 25/21
Mullins [4]  1/19 2/8 12/17 13/20
multiple [3]  19/14 23/12 24/21
must [1]  10/18
my [20]  3/9 4/13 5/11 5/17 8/1 8/2 10/10 13/5 20/18 22/11 23/25 24/14 26/13 26/17 27/14 30/8 30/12 30/14 32/12 32/16

**N**

narrative [1]  5/3
narrow [3]  3/12 14/13 14/14
narrowed [5]  3/12 5/7 18/3 19/11 22/1
necessarily [1]  12/12
necessary [6]  16/24 16/25 25/10 25/12 25/20 29/14
need [37]
never [2]  15/7 15/11
New [1]  5/14
next [3]  27/13 28/17 29/9
no [15]  1/2 2/2 11/9 14/5 16/5 16/22 18/16 18/19 19/14 20/10 22/20 22/21 22/24 25/25 27/11

**nonparties** [5]  2/11 3/9 3/14 18/1 25/3
nonparty [2]  11/20 25/14
nonparty's [1]  2/15
Nos [2]  21/22 21/24
not [51]
note [1]  6/4
noted [2]  14/1 16/4
nothing [1]  17/9
Notwithstanding [1]  3/11
November [1]  28/20
Novoship [16]  1/6 2/3 2/7 2/8 3/7 3/11 8/8 9/9 9/11 10/15 11/1 11/10 21/19 23/10 28/6 32/9
Novoship's [1]  10/14
now [8]  7/7 8/15 10/10 14/15 20/7 20/19 20/24 25/7
number [4]  4/11 12/5 18/15 19/21

**O**

objections [10]  2/15 4/6 4/8 4/14 4/15 4/21 5/1 5/3 14/2 17/8
obligations [1]  23/15
obtain [2]  9/1 20/5
obtained [5]  8/19 9/5 9/18 20/2 20/22
October [2]  1/7 32/9
off [1]  17/17
offer [1]  15/7
offered [3]  7/18 20/10 24/16
offering [1]  24/7
office [2]  5/14 6/19
offices [1]  32/7
offline [1]  29/20
Okay [3]  3/2 21/14 30/22
old [2]  23/8 24/10
once [2]  6/17 26/22
one [14]  4/11 5/11 5/16 6/12 9/25 12/5 12/8 12/9 14/19 19/13 20/21 24/6 25/7 30/20
ones [2]  16/12 17/22
online [1]  23/5
only [5]  14/19 17/19 17/24 29/14 29/23
open [2]  23/9 24/10
opportunity [1]  12/3
oppose [1]  15/14
opposing [1]  20/5
opposite [1]  24/1
opposition [3]  3/21 18/24 27/3
order [14]  2/1 2/15 4/13 8/24 10/4 13/17 14/4 14/9 15/13 19/25 22/15 30/8 30/14 30/15
original [2]  3/6 18/14
originally [2]  17/16 20/23
other [17]  3/15 3/17 3/25 4/10 6/10 9/22 12/6 12/10 12/11 13/21 14/17 17/5 20/3 20/9 20/22 21/1 21/13
otherwise [1]  13/12
our [34]
out [17]  5/20 15/6 18/15 18/21 19/24 23/2 23/9 24/16 25/18 25/20 27/20 28/7 28/14 29/19 30/3 30/6 30/15
outside [1]  6/1
outweighs [1]  4/3
overbroad [6]  3/13 16/16 16/18 20/1 21/20 22/17
overly [2]  4/16 24/15
overwhelmingly [1]  13/20
own [1]  10/24

**P**

page [4]  4/12 7/22 14/21 30/14
pages [2]  11/10 23/3
paper [1]  23/8
papers [2]  6/4 10/12
paragraph [2]  17/5 10/15
paralegals [1]  24/3
part [8]  4/5 8/9 10/24 12/15 14/11 14/13 15/1 28/6
parte [1]  19/20
partially [1]  13/17
parties [5]  5/6 6/13 7/6 8/19 13/5
parties' [3]  4/1 4/2 5/17
party [4]  8/24 9/12 13/5 30/20
PATRICK [1]  1/14

**pay** [8]  5/12 5/18 24/13 24/14 25/5 26/13 27/9 28/6
paying [1]  26/20
PDVSA [2]  10/2 10/8
pending [4]  3/16 7/21 20/3 20/4
people [2]  6/19 23/8
percent [1]  21/16
Perez [1]  8/5
perspective [1]  27/23
petition [4]  6/16 7/16 10/14 19/20
phonetic [2]  8/14 10/13
places [1]  21/1
Plaintiffs [2]  1/7 1/19
plan [2]  29/10 29/12
platform [1]  22/7
pleadings [2]  2/17
please [1]  2/4
pleases [1]  28/21
pled [1]  5/11
pocketing [1]  10/2
point [5]  16/3 18/10 20/18 24/13 30/19
pointed [1]  20/22
policy [1]  15/2
portions [1]  5/3
position [2]  3/3 10/23
potentially [1]  7/2
PowerPoint [3]  7/7 7/22 8/9
practiced [1]  4/10
preceded [1]  5/4
prefer [1]  28/22
prejudice [2]  30/6 30/16
presides [1]  7/25
Preston [17]  6/4 6/12 6/13 6/18 7/3 11/9 11/11 11/13 11/16 11/19 19/23 21/15 22/5 22/13 23/18 27/15 29/19
presume [1]  9/12
presumptively [1]  26/1
pretty [2]  4/11 19/16
prevail [1]  10/17
previous [1]  12/9
privilege [5]  6/23 16/24 22/10 22/10 22/13
probably [1]  30/8
probative [1]  3/15
problem [2]  14/18 27/10
Procedure [1]  6/22
proceeding [3]  7/12 10/1 11/2
proceedings [4]  31/4 32/8 32/13 32/15
process [2]  25/1 26/9
processing [1]  24/22
produce [5]  7/18 9/13 13/13 18/16 20/13
produced [3]  13/12 16/10 17/20
producing [1]  25/14
product [1]  11/6
production [5]  26/25 27/8 28/13 28/14 30/17
productions [2]  14/16 17/4
proper [1]  6/11
properly [1]  22/22
proportional [4]  4/17
proportionality [3]  3/18 3/23 25/4
proposal [1]  20/17
propose [2]  22/17
proposed [2]  4/3 27/3
protective [5]  2/15 13/7 13/7 14/4 15/13
protocol [2]  22/23 29/18
prove [2]  10/4 15/1
proven [1]  10/18
provided [4]  2/18 14/8 16/20 18/3
public [2]  9/23 15/2
publicized [1]  5/13
pull [1]  23/9
purportedly [1]  3/12
purpose [2]  19/8 25/17
pushing [1]  22/16
put [3]  4/9 7/8 22/9

**Q**

question [1]  26/13
quite [2]  20/9 23/10
quote [1]  10/17

**R**

raised [1]   14/12
rather [1]   6/9
re [4]   1/6 2/2 11/7 32/9
re-litigate [1]   11/7
read [2]   4/21 22/2
readily [2]   3/17 11/15
real [2]   20/20 25/2
realize [1]   25/11
really [13]   5/5 6/3 6/6 6/24 7/2 7/9
 8/21 9/19 11/18 15/24 16/18 23/19
 23/20
Realtime [3]   1/24 32/6 32/20
reason [2]   4/5 19/14
reasonable [20]   3/16 18/13 19/3
 19/17 25/6 25/7 25/11 26/2 26/6
 26/14 26/16 26/19 26/25 27/8 27/9
 28/13 28/13 29/12 29/25 30/17
received [3]   5/11 7/8 14/2
recent [1]   5/10
recently [2]   15/19 18/9
recess [1]   31/2
record [2]   2/5 25/13 32/15
recorded [1]   32/8
recording [1]   32/13
reduce [4]   13/18 16/19 16/21 19/4
reduced [2]   15/8 32/14
REED [5]   1/20 2/9 7/18 8/19 8/25
refer [1]   3/9
referenced [1]   17/11
referring [2]   15/10 15/15
regarding [2]   8/10 11/23
regulating [1]   29/2
rejected [2]   1/19 20/18
related [2]   7/13 8/18
relating [1]   11/23
relationship [1]   10/8
relative [1]   4/1
relevancy [2]   16/23 16/23
relevant [4]   4/1 11/19 23/20 24/8
remainder [1]   4/22
repeat [2]   4/7 4/14
reply [5]   3/5 4/24 5/21 18/17 23/3
Reporter [1]   1/24 32/6 32/20
represent [1]   8/2
represented [1]   6/12
representing [1]   17/14
represents [3]   6/5 8/3 8/15
reputations [1]   26/3
request [5]   3/11 14/6 18/4 20/15
 29/24
requesting [1]   15/16
requests [21]   3/7 3/12 3/13 5/4 5/7
 5/22 11/22 14/9 14/12 14/14 15/4
 15/9 15/11 19/5 19/12 19/25 21/18
 21/21 21/22 21/23 23/24
require [2]   30/6 30/16
required [2]   12/22 20/25
requirement [4]   3/23 4/12 11/10 16/5
resources [2]   4/2 5/17
respect [2]   4/15 5/16
respectfully [2]   4/20 28/19
respond [3]   3/14 4/6 4/18
response [8]   13/19 13/23 15/11 18/17
 19/18 26/15 26/16 26/17
responses [3]   5/4 10/25 25/25
responsive [11]   6/17 6/25 7/2 7/3
 10/12 14/19 15/10 21/17 22/3 22/8
 28/9
responsiveness [1]   16/24
result [1]   32/11
results [1]   22/19
review [6]   16/23 18/19 22/7 22/7
 26/9 26/12
reviewed [2]   2/17 2/17
reviewing [3]   19/15 21/16 24/4
right [14]   2/14 7/12 8/15 17/25
 18/10 19/11 20/7 20/16 21/14 22/9
 25/6 27/6 28/3 30/25
RKA [1]   1/2
rote [1]   4/14
rule [9]   3/18 3/19 3/19 4/1 4/19
 4/25 5/1 5/16 25/4
Rule 26 [4]   3/19 4/1 5/16 25/4
Rule 45 [1]   3/19
Rules [1]   6/22

ruling [1]   5/10
rulings [1]   29/22
run [12]   3/18 15/25 16/8 16/11 17/1
 17/21 18/20 22/15 22/18 23/6 24/17
 24/19
run-around [3]   16/8 16/11 17/21
running [4]   6/1 16/21 22/16 24/3
Ruperti [8]   6/13 10/5 10/7 10/18
 10/19 14/24 15/1 27/17
Ruperti's [1]   10/2

**S**

said [15]   5/5 14/9 16/16 17/12 18/24
 19/5 19/16 20/10 20/11 20/11 20/12
 27/16 27/17 28/1 32/13
same [3]   4/7 4/14 16/9
sanctions [1]   22/21
Sargeant [24]   1/9 2/11 2/12 2/12
 2/12 5/10 6/10 7/14 8/2 8/4 8/4 8/5
 10/6 11/17 11/18 12/13 14/25 15/21
 15/25 17/1 17/23 19/24 23/12 32/10
Sargeant's [1]   6/1
Sargeant, [11]   7/23 8/12 8/15 9/1
 9/12 9/13 13/10 14/17 16/10 17/15
 17/19
Sargeant, III [11]   7/23 8/12 8/15
 9/1 9/12 9/13 13/10 14/17 16/10
 17/15 17/19
satisfied [1]   13/17
satisfies [1]   13/14
satisfy [2]   7/19 13/17
save [1]   12/18
saw [1]   21/17
say [15]   4/15 9/22 9/25 10/4 10/11
 10/17 10/22 12/17 13/20 21/8 22/22
 24/6 26/5 26/11 29/22
saying [3]   9/8 16/9 25/14
scattered [1]   24/3
schedule [1]   2/25
scope [7]   3/8 12/21 16/19 19/4 22/1
 26/19 27/22
Scott [1]   1/21
search [18]   16/20 16/21 18/3 18/20
 18/21 18/24 18/25 19/12 22/19 23/25
 24/7 24/17 25/17 25/19 26/8 26/24
 28/3 28/4
searches [7]   6/2 17/2 22/15 22/16
 22/17 22/18 23/5
second [2]   10/15 29/18
secondary [1]   17/1
Section [1]   3/20
seek [5]   3/15 3/16 10/6 13/3 13/10
seeking [3]   19/8 19/9 23/20
seeks [1]   8/8
seem [1]   12/6
seems [2]   11/5 27/6
self [1]   29/2
self-regulating [1]   29/2
sending [2]   24/5 25/15
Senior [1]   8/5
sense [1]   28/11
sensitive [2]   9/17 11/8
sent [1]   18/23
sequence [1]   5/21
served [1]   3/7
server [14]   6/1 16/21 17/1 17/11
 17/23 17/24 18/1 18/2 18/9 22/24
 23/1 23/5 23/12 24/6
set [8]   3/3 3/6 13/2 28/15 28/17
 28/20 29/6 30/19
sets [1]   16/22
settled [2]   10/10 11/7
settlement [2]   10/3 10/8
sever [3]   15/20 15/21 18/19
several [1]   18/1
share [1]   15/19
shareholders [1]   6/15
shed [1]   14/24
shell [1]   15/25
shortcut [1]   23/7
should [9]   4/21 8/19 11/4 11/10 25/3
 26/7 29/2 30/4 30/10
shouldn't [3]   12/12 29/2 29/3
show [1]   10/5
showed [1]   27/16
shuffle [1]   10/11

Signature [1]   32/20
significantly [1]   19/12
simple [1]   24/23
simply [3]   22/16 24/17 26/5
since [1]   15/17
SINGERMAN [7]   1/21 2/10 2/13 5/24
 14/3 17/25 18/7
Singerman LLP [1]   2/13
Singerman's [3]   16/2 17/14 17/21
single [5]   15/20 17/10 17/24 18/9
 22/23
sink [1]   17/8
situation [2]   5/2 19/22
six [2]   4/7 18/13
skill [1]   32/16
slide [1]   14/21
slides [2]   2/18 14/21
SMITH [5]   1/20 2/9 7/18 8/19 8/25
Smyrna [1]   32/7
solicitor [1]   6/5
some [8]   4/13 9/23 10/12 12/6 12/18
 14/16 17/4 21/21 21/23 29/17 29/21
 30/10
somebody [1]   24/10
something [3]   5/15 8/8 25/12
sometime [1]   28/20
somewhere [2]   21/8 28/10
sorry [3]   16/23 23/16 23/22
sort [1]   4/18
sounds [3]   19/17 28/24 29/25
source [1]   16/4
sources [4]   3/18 12/10 12/11 13/22
SOUTHERN [2]   1/1 7/23
speak [1]   20/7
specific [2]   9/16 14/5
specifically [2]   12/13 21/11
specifics [2]   4/6 30/14
spending [1]   29/19
spit [1]   18/15
spot [2]   19/13 19/13
stage [1]   27/4
stages [1]   25/19
staggering [1]   3/8
standing [1]   16/17
start [1]   6/2
startup [1]   23/4
statement [1]   18/12
statements [1]   16/17
STATES [2]   1/1 1/14
stating [1]   25/13
status [4]   28/20 29/4 29/7 30/20
step [1]   15/3
Steven [1]   10/13
still [8]   3/13 11/19 15/3 16/11
 16/18 20/7 20/19 30/7
subject [1]   11/8
subparts [1]   19/25
subpoena [9]   5/11 6/9 12/8 12/12
 12/22 15/5 15/8 19/4 25/15
subpoenaed [7]   6/10 8/25 9/1 9/11
 11/11 21/1 21/6
subpoenaing [1]   11/17
subpoenas [11]   2/16 2/16 3/7 3/19
 7/19 13/6 13/12 13/14 14/8 16/19
 18/3
subset [1]   21/11
sue [1]   14/25
sufficient [1]   26/5
suggesting [1]   26/16
summary [1]   18/10
supplied [1]   15/8
support [3]   5/24 7/11 20/21
supposed [1]   3/24
sure [1]   8/25
sworn [1]   13/2

**T**

take [2]   24/24 25/19
taken [1]   21/12
talk [3]   12/4 26/21 28/13
talking [6]   4/23 18/22 21/10 21/11
 25/21 25/21 30/5
targets [1]   16/7
task [1]   24/23
team [2]   27/13 27/13
technically [1]   15/24

**T**

**technological [1]**   32/12
**Telephonic [2]**   1/8 1/18
**tell [8]**   4/13 7/3 12/22 15/15 19/16
  21/17 22/18 24/17
**telling [1]**   18/4
**temporal [1]**   22/1
**terabytes [1]**   23/1
**term [1]**   18/20
**terms [17]**   6/17 6/23 16/20 16/21
  18/3 18/21 18/24 18/25 19/12 19/21
  23/25 24/7 25/4 25/17 25/19 28/3
  28/4
**testimony [3]**   8/17 13/2 15/10
**than [5]**   5/15 6/9 14/8 24/10 27/15
**Thank [4]**   2/22 30/23 30/24 31/1
**that [215]**
**that's [18]**   5/12 6/11 7/15 9/19 11/8
  12/17 15/25 16/10 16/24 18/13 19/21
  21/6 21/9 22/11 22/23 23/1 27/2
  29/25
**their [12]**   5/25 7/22 8/7 9/25 10/24
  14/3 16/15 18/12 18/14 19/11 21/19
  23/9
**them [34]**
**then [14]**   6/2 17/1 17/16 18/7 22/22
  23/2 25/15 25/19 26/24 28/3 28/7
  28/11 28/24 30/5
**there [34]**
**therefore [1]**   10/23
**these [19]**   6/7 14/16 15/10 15/22
  16/3 16/6 16/7 16/13 17/5 17/6 17/7
  18/12 18/16 18/18 21/18 23/19 25/9
  25/16 28/12
**they [94]**
**they're [4]**   12/15 16/9 20/16 22/8
**they've [2]**   9/5 19/12
**thing [5]**   4/18 9/19 15/12 16/9 16/14
**things [8]**   11/23 12/2 12/4 12/23
  18/12 23/24 24/4 25/16
**think [14]**   4/5 5/2 6/11 20/21 24/20
  25/3 27/12 27/22 28/23 29/6 29/8
  29/17 29/19 30/12
**thinks [1]**   30/20
**this [46]**
**thoroughly [1]**   7/10
**those [32]**   3/12 5/22 5/23 7/17 7/18
  8/23 8/24 9/3 9/13 9/15 9/20 11/15
  12/23 13/6 13/9 13/10 13/13 16/21
  20/5 20/8 20/14 20/19 20/20 20/21
  20/22 21/3 21/13 21/22 21/24 22/1
  25/19 30/20
**though [1]**   15/24
**thousands [1]**   24/19
**three [1]**   26/12
**through [9]**   1/10 3/24 5/13 11/21
  11/21 12/6 13/12 14/7 25/23
**thrown [1]**   17/8
**time [11]**   5/8 7/5 14/2 15/14 16/19
  18/19 24/9 24/15 24/24 26/4 29/19
**time-wise [1]**   5/8
**times [1]**   12/5
**today [4]**   3/1 17/14 23/24 25/8
**together [14]**   7/8 12/17 12/21 19/1
  26/7 26/11 27/12 27/19 27/25 28/12
  28/16 28/24 29/1 30/3
**told [2]**   20/3 20/5
**ton [1]**   9/4
**too [3]**   12/1 26/6 28/2
**towards [1]**   10/5
**transaction [2]**   22/4 22/5
**transactions [1]**   23/19
**transcribed [2]**   1/24 32/8
**Transcriber [1]**   32/20
**TRANSCRIBER'S [1]**   32/3
**transcript [2]**   1/13 32/15
**transcripts [7]**   8/20 8/23 9/14 9/20
  20/8 21/4 21/12
**transfer [1]**   9/17
**tried [4]**   3/12 18/23 23/17 25/23
**true [1]**   32/15
**trust [1]**   29/1
**try [3]**   16/14 27/3 30/17
**trying [4]**   10/11 16/3 19/3 23/14
**two [6]**   7/11 14/20 15/13 16/22 19/21
  26/12

**typewritten [1]**   32/14

**U**

**U.S [3]**   5/13 6/21 22/13
**UK [4]**   1/6 2/3 2/7 32/9
**unauthorized [2]**   7/15 8/10
**uncovered [1]**   10/2
**under [7]**   3/19 6/15 12/22 13/7 16/4
  25/4 25/14
**underlying [1]**   15/2
**understand [5]**   4/25 6/21 14/22 26/15
  26/19
**understanding [4]**   17/13 23/19 24/25
  28/5
**unduly [4]**   3/13 14/10 16/15 19/7
**UNITED [2]**   1/1 1/14
**universe [2]**   26/22 28/1
**unless [2]**   3/22 30/2
**unreasonable [2]**   3/8 19/7 25/15
**unreasonably [2]**   28/5 28/7
**unresponsive [1]**   28/3
**up [10]**   6/1 6/18 12/5 18/16 24/10
  26/24 27/8 28/1 29/9 29/12
**upheld [1]**   12/12
**us [17]**   4/11 4/13 4 4/14 5/21 14/16
  15/7 15/7 15/15 16/3 16/5 16/8 16/11
  17/21 20/5 22/7 23/7 27/4

**V**

**valid [1]**   22/10
**various [1]**   6/15
**vastly [1]**   3/13
**vendor [2]**   6/1 23/2
**venture [1]**   10/8
**ventures [1]**   6/15
**very [9]**   7/5 8/8 9/4 13/1 22/17 25/2
  25/2 26/2 26/2
**vessels [1]**   11/24
**viable [1]**   15/3
**volume [3]**   18/21 25/18 25/22
**voluminous [2]**   8/17 13/1
**voluntarily [1]**   11/1
**vs [3]**   1/8 14/17 32/10

**W**

**walk [1]**   14/7
**want [7]**   6/7 11/5 17/9 21/2 26/9
  28/19 28/20
**was [24]**   2/1 5/15 6/14 7/8 7/14 10/1
  10/8 10/10 10/11 12/25 14/3 14/5
  15/6 15/7 15/12 17/16 17/17 19/1
  20/10 20/13 20/17 26/13 27/18 29/11
**wasn't [1]**   22/3
**way [8]**   11/17 13/6 17/8 27/20 28/2
  28/8 30/1 30/10
**we [97]**
**we'll [1]**   30/21
**we're [15]**   2/14 4/23 7/6 8/24 11/20
  13/5 15/16 19/8 19/9 22/19 23/14
  25/21 25/21 27/19 28/16
**we've [4]**   3/6 5/2 15/17 15/23 16/14
  18/23 18/23 19/3 24/16 25/23 25/24
**weeds [1]**   12/2
**week [3]**   27/13 28/17 29/9
**weigh [1]**   29/23
**well [9]**   4/4 4/20 6/20 10/25 13/16
  18/13 23/21 26/1 27/16
**were [25]**   2/18 3/8 8/3 8/5 8/12 8/25
  9/4 9/16 10/19 11/7 13/11 14/8 14/9
  14/12 15/3 19/5 20/3 20/17 21/12
  22/17 24/2 25/1 28/24 31/4 32/13
**weren't [1]**   28/3
**Wertman [15]**   1/21 2/10 2/21 4/4 14/8
  14/12 14/15 17/4 19/11 20/5 25/8
  26/22 27/1 27/3 27/6
**what [30]**   5/21 5/25 6/3 8/21 10/11
  11/5 12/15 14/8 14/22 15/1 15/6
  15/16 17/19 18/4 18/18 18/21 19/8
  19/16 19/24 20/10 21/14 22/21 23/17
  23/20 26/15 26/23 27/2 27/12 30/4
  30/5
**what's [6]**   6/24 12/22 13/23 19/18
  23/11 25/20
**whatever [3]**   12/19 26/12 28/21
**when [9]**   4/18 14/3 15/8 15/12 22/21
  23/24 24/10 24/25 25/1

**where [6]**   12/18 12/23 12/25 19/22
  22/11 23/8
**whether [2]**   4/2 12/10
**which [37]**
**who [13]**   5/11 6/4 6/5 6/12 6/14 8/4
  8/14 9/12 17/10 17/12 17/15 17/22
  24/13
**whole [1]**   25/17
**why [1]**   10/16
**widely [1]**   5/13
**will [17]**   3/9 5/7 6/4 6/22 15/21
  16/21 18/25 21/15 26/18 27/8 27/9
  29/5 29/22 29/23 30/8 30/9 30/15
**willing [5]**   25/5 26/13 26/21 27/1
  27/7
**wise [1]**   5/8
**withdraw [1]**   18/25
**within [1]**   23/12
**without [2]**   30/5 30/16
**Wolff [3]**   1/24 32/6 32/20
**work [13]**   11/6 18/23 19/1 23/14 27/1
  27/7 28/14 29/1 29/19 29/22 30/3
  30/3 30/6
**working [3]**   18/6 24/21 28/24
**world [1]**   24/3
**would [36]**
**wouldn't [7]**   13/13 13/16 15/4 20/12
  20/15 21/17 27/17
**wrinkle [1]**   17/18
**written [1]**   30/15
**wrongful [2]**   10/2 14/24
**wrongfully [1]**   10/5

**Y**

**Yeah [1]**   23/23
**years [2]**   21/21 21/23
**yes [7]**   4/25 18/5 18/14 26/15 26/17
  27/2 29/15
**yet [1]**   4/13
**York [1]**   5/14
**you [107]**
**you're [11]**   2/25 9/8 15/10 15/15
  17/11 18/2 18/4 26/1 26/10 26/25
  30/2
**you've [1]**   21/6
**your [43]**